# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **N.W., a minor child, by and through her mother and next friend, SADA BROWN,** | No. _____ |
| **Plaintiff,** | |
| v. | |
| **KNOWLEDGE ACADEMIES, INC.,** | **JURY DEMAND** |
| **Defendant.** | |

## COMPLAINT

For her Complaint under Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681, against Defendant Knowledge Academies, Inc. ("Defendant"), Plaintiff N.W.,[1] a minor child, by and through her mother and next friend, Sada Brown ("Ms. Brown"), states as follows:

## INTRODUCTION

1. N.W. files this action, by and through her mother and next friend Ms. Brown, to remedy sexual harassment, a sexually hostile educational environment, and retaliation that N.W. suffered while matriculating as a student at Knowledge Academy at the Crossings ("Knowledge Academy") in Antioch, Tennessee.

2. While enrolled at Knowledge Academy, N.W. was subjected to a physical assault, sexual harassment, and a sexually hostile educational environment by the Dean of Students, Chadwick Germany ("Germany"). After N.W. and Ms. Brown reported Germany's unlawful

---

[1] N.W. is a minor whose full name is not included in this lawsuit under Rule 5.2(a)(3) of the Federal Rules of Civil Procedure, which permits a minor plaintiff to include only "the minor's initials" in court filings. Defendant and its counsel are aware of N.W.'s identity.

actions to Defendant, Defendant did not correct the sexual harassment and/or sexually hostile educational environment and then retaliated against N.W. by suspending and then expelling her for a pretextual reason.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction. N.W.'s claims arise under a federal statute, namely Title IX.

4. Venue is proper in this Court. A substantial part of the events giving rise to this action occurred in Davidson County, Tennessee, and Defendant operates Knowledge Academy in Davidson County.

## PARTIES

5. N.W. is an individual and a minor child; she resides in Davidson County, Tennessee.

6. Ms. Brown is an individual, N.W.'s mother, and legal guardian; she resides in Davidson County, Tennessee.

7. Knowledge Academies, Inc. is a domestic corporation, organized under the laws of Tennessee.

8. Defendant's registered agent for service of process is Eric Lewis, 5320 Hickory Hollow Pkwy., Antioch, Tennessee 37013.

9. N.W. will remain a minor child until her eighteenth birthday, which will occur approximately 2 months after the filing of this lawsuit.

10. At all relevant times, N.W. was a student at Knowledge Academy.

11. At all relevant times, Defendant has received federal financial assistance within the meaning of Title IX.

12. At all relevant times, Defendant has been subject to the requirements of Title IX.

13. Defendant holds itself out on its website as being subject to the requirements of Title IX.[2]

14. Defendant maintains a position known as Title IX Coordinator.[3]

## FACTS

15. Germany began sexually harassing N.W. in approximately late 2022 or early 2023 during her sophomore year of high school.

16. Specifically, Germany would touch N.W. without her consent, ask her to give him hugs, and stare at her rear end.

17. N.W. informed Germany that his touching and pestering for hugs was unwanted and unwelcome and told him to stop.

18. Despite N.W. clearly opposing Germany's sexual harassing conduct and requesting that he end it, Germany did not stop sexually harassing her.

19. Germany's sexual harassment of N.W. worsened during the 2023–24 school year.

20. Germany began asking parents of other students about N.W., to the point that those other parents began calling Ms. Brown to notify her of Germany's conduct because they were worried about N.W.'s safety.

21. Germany engaged in classic grooming behavior targeting N.W. by giving her money in exchange for N.W. baking him cookies.

---

[2] https://www.knowledgeacademies.org/apps/pages/index.jsp?uREC_ID=544335&type=d.

[3] *Id.*

22. Germany's sexual harassment of N.W. culminated in a physical assault and sexual harassment on February 29, 2024, when he told N.W. to "come here" as she entered school and took her to a secluded area and hugged her without her consent.

23. The hug was front-to-front, and Germany's groin area was pressed against N.W. during the hug.

24. Despite N.W. trying to end the physical assault and sexual harassment, Germany would not let her go.

25. Instead, Germany kept holding N.W. in an intimate way and kissed her forehead, telling her that she was "doing good," or words to that effect.

26. Two of N.W.'s classmates witnessed Germany's physical assault and sexual harassment of N.W. on February 29.

27. When N.W. came home that day, she immediately told Ms. Brown about what happened, saying that she was scared and uncomfortable and worried that Germany might try to harm her one day.

28. The next day, March 1, 2024, Ms. Brown called and emailed Defendant to report Germany's physical assault and sexual harassment of N.W.

29. Specifically, Ms. Brown spoke to Principal Enuel Matthew Caraballo ("Caraballo") when he returned her call and email.

30. Ms. Brown informed Caraballo of Germany's touching, hugging, and kissing of N.W., described this behavior as sexual harassment, informed Caraballo of the two witnesses to the sexual harassment the day before, and asked Caraballo why Germany, an administrator, was permitted to engage in this conduct on school property.

4

31. Ms. Brown also informed Caraballo that Ms. Brown was aware of at least two other complaints by students against Germany for similar behavior that made the students uncomfortable.

32. Caraballo promised Ms. Brown that he would investigate her report of sexual harassment against Germany.

33. On March 2, 2024, Ms. Brown and N.W. filed a police report against Germany for his physical assault and sexual harassment of N.W.

34. The police visited Ms. Brown's house to ask additional questions about Germany and how the physical assault and sexual harassment made her feel and then contacted the Tennessee Department of Children's Services.

35. Although the police promised to investigate and Ms. Brown followed up with them at least once, it does not appear that the police took any action against Germany.

36. On March 5, 2024, Caraballo and Defendant let Germany return to Knowledge Academy without taking any meaningful disciplinary action against him for his physical assault and sexually harassing behavior.

37. Caraballo claimed to Ms. Brown that Defendant had "talked to" Germany about his behavior and his professional responsibilities and that he knew not to hug or to touch students anymore.

38. Ms. Brown rightly pointed out to Caraballo that Germany should not have needed counseling to know how to act around children, considering his position as Dean of Students, and that she was not happy with the decision to let him return to school without a suspension or other formal discipline.

39. Ms. Brown also reiterated to Caraballo that Germany's harassing conduct was not limited to N.W. and that Germany was making other students feel uncomfortable.

40. In response, Caraballo told Ms. Brown that his decision was final; Defendant would not take any further action against Germany.

41. On March 20, 2024, Ms. Brown called the State of Tennessee charter school complaint hotline to report Germany's physical assault and sexual harassment of N.W. and Defendant's failure to correct his unlawful behavior.

42. Ms. Brown shared with the State information about the physical assault and sexual harassment that Germany subjected N.W. to, that Germany's conduct was sexual harassment, and that she was unhappy with Defendant's response and decision to keep Germany at the school despite the physical assault and sexual harassment.

43. When Ms. Brown spoke to a representative of the State, she learned that Defendant had not reported her complaint about Germany to the State as required.

44. Defendant did not comply with its own, published Title IX processes related to Ms. Brown's complaint against Germany on behalf of N.W.

45. Tara Carmichael ("Carmichael"), Defendant's Title IX Coordinator, never contacted Ms. Brown to gather any information about the complaint on N.W.'s behalf and certainly did not "respond promptly to all general reports as well as formal complaints of sexual harassment," as promised on Defendant's website.[4]

46. On information and belief, Caraballo did not inform Carmichael of the purported "investigation" of Germany.

---

[4] *Id.*

47. On information and belief, Carmichael did not provide any input on the purported "investigation," as promised on Defendant's website.[5]

48. On March 29—just over a week after Ms. Brown's call to the complaint hotline—Caraballo called Ms. Brown to inform her that N.W. had been suspended from school for 10 days and was facing expulsion.

49. Caraballo was clearly pleased with himself for his retaliatory actions against Ms. Brown and N.W., because he was giggling or laughing when he spoke to Ms. Brown.

50. The purported reason for N.W.'s suspension and expulsion was that she allegedly gave another student THC gummies in violation of the Zero Tolerance ("ZT") Drug policy.

51. Ms. Brown immediately informed Caraballo that she knew those allegations were false, because when Ms. Brown dropped N.W. off at school, the only candy that N.W. had with her was Trolli gummy candy that did not contain any THC.

52. When KA staff searched N.W., they found only the Trolli gummy candy that Ms. Brown mentioned and did not find any illegal drugs.

53. After the failed search, Caraballo harassed N.W. and pressured her to provide a false written statement admitting to possession of drugs that she did not have on her person.

54. Specifically, Caraballo read N.W.'s statement twice, and each time he read it, he directed N.W. to admit in writing that she had THC gummies with her at school.

55. Caraballo even threatened N.W. that she would not be able to talk to her mother if she did not change her statement to admit possessing THC gummies.

56. N.W. eventually changed her written statement to contain false information because of Caraballo's coercion.

---

[5] *Id.*

57. There was no evidence other than the false, coerced statement from N.W. that Caraballo obtained that N.W. ever had any drugs on her person and no evidence that she gave any drugs to any other student while at school.

58. A review of security footage showed N.W. refusing to give the female student who was hospitalized for drugs any of her drug-free gummy candy.

59. A review of security footage showed that another female student, not N.W., giving the student who was hospitalized for drugs something to eat that made her ill.

60. A hearing on the allegations against N.W. was held on April 5, 2024.

61. Despite Defendant promising to keep Germany away from N.W. during the appeal hearing, Germany was present at the appeal hearing and initially sitting directly across from N.W.

62. Defendant's staff had already made up their minds before hearing any evidence and decided to move forward with expelling N.W. despite the lack of any evidence of wrongdoing on her part apart from the coerced "confession."

63. After the hearing, N.W. was expelled from Knowledge Academy allegedly for committing a ZT drug offense.

64. The expulsion for a ZT drug offense prevented Ms. Brown from enrolling N.W. in Metro Nashville Public Schools for the next school year.

65. Ms. Brown enrolled N.W. at Penn Foster so that N.W. could complete her high school education.

66. Ms. Brown and N.W. incurred tuition expenses due to N.W.'s attendance at Penn Foster.

## COUNT I
## Sexual Harassment and Sexually Hostile Educational Environment
## 20 U.S.C. § 1681

67. N.W. incorporates by reference all the prior allegations in this Complaint.

68. N.W. is a woman and therefore at all relevant times was and is a member of a protected class.

69. N.W. was subjected to unwelcome sexual harassment in the form of sexual advances and other verbal or physical conduct of a sexual nature.

70. The harassment was based on N.W.'s sex.

71. The sexual harassment had the effect of unreasonably interfering with N.W.'s educational performance and creating an intimidating, hostile, or offensive educational environment.

72. N.W.'s refusal to submit to the unwelcome advances resulted in a tangible educational detriment.

73. Defendant is vicariously liable for the sexual harassment.

74. The sexual harassment N.W. suffered caused her damages, including but not limited to tuition costs, garden-variety emotional distress, and compensatory damages.

75. Defendant's conduct warrants imposition of punitive damages.

## COUNT II
## Retaliation for Sexual Harassment Complaints
## 20 U.S.C. § 1681

76. N.W. incorporates by reference all the prior allegations in this Complaint.

77. N.W. and Ms. Brown engaged in activities protected by Title IX, including but not limited to opposing sexual harassment and physical assault and reporting sexual harassment both internally to Defendant and externally to State agencies.

78. Defendant at all relevant times knew that N.W. and Ms. Brown had engaged in Title IX–protected activities.

79. Defendant took adverse, school-related actions against N.W. after learning that she engaged in Title IX–protected activities, including but not limited to suspending N.W. and expelling N.W. for pretextual reasons.

80. There is a causal connection between N.W,'s and Ms. Brown's Title IX–protected activities and the adverse, school-related actions that Defendant took against N.W.

81. Defendant's adverse, school-related action against N.W. caused her to suffer damages, including but not limited to tuition costs, garden-variety emotional distress, and compensatory damages.

82. Defendant's conduct warrants imposition of punitive damages.

## PRAYER FOR RELIEF

Based on the foregoing, N.W. prays for the following relief from this Court:

A. Awarding N.W. all damages to which she is entitled under federal law for sexual harassment, a sexually hostile educational environment, and retaliation, including but not limited to tuition costs, garden-variety emotional distress, compensatory damages, and punitive damages;

B. Requiring Defendant to pay all N.W.'s attorneys' fees;

C. Requiring Defendant to pay the costs and expenses of this action;

D. Requiring Defendant to pay pre-judgment interest and, if applicable, post-judgment interest; and

E. Granting N.W. such other, further, and general relief to which she may be entitled.

Dated: January 21, 2025  Respectfully submitted,

/s/ *Melody Fowler-Green*
Melody Fowler-Green (#023266)
/s/ *N. Chase Teeples*
N. Chase Teeples (#032400)
YEZBAK LAW OFFICES PLLC
P.O. Box 159033
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
mel@yezbaklaw.com
teeples@yezbaklaw.com

*Attorneys for Plaintiff*